ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2007 OCT 31 PM 1:05
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| JULIUS M. BURKETT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 107-080 |
| | ) |
| LOGAN MARSHALL, Sheriff of McDuffie | ) |
| County; ROY REEVES, Lieutenant; FNU | ) |
| WILLIAMS, Major; CHRIS DURDEN, | ) |
| Captain; and MCDUFFIE COUNTY | ) |
| JAILOR'S STAFF 05-07, | ) |
| | ) |
| Defendants. | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, an inmate incarcerated at the McDuffie County Jail ("the Jail") in Thomson, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, on August 13, 2007, the Court reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff

was directed to file an amended complaint. (Doc. no. 7). Plaintiff has submitted an amended complaint, (doc. no. 8), and it is this document that the Court will now screen.

## I. BACKGROUND

Upon review of Plaintiff's amended complaint, the Court finds the following. Plaintiff has filed the above-captioned case against: (1) Sheriff Logan Marshall, (2) Major Williams, (3) Captain Chris Durden, (4) Lieutenant Roy Reeves, and (5) the McDuffie County Jailor's Staff 05-07. (Doc. no. 8, pp. 1, 4). Plaintiff's amended complaint is comprised of allegations concerning a wide variety of issues. The Court will address each one in turn.

Plaintiff asserts a complaint about the lack of sanitation at the Jail. (Id. at 7). He states that proper cleaning supplies are not provided, and the supplies that are provided - one mop, one mop bucket with water, one broom, and on occasion a spray bottle with a "watered down blueish substance" - are inadequate to clean the entire area for which they are intended. (Id.). Moreover, these products are only accessible for one hour a day. (Id.). Plaintiff also laments that no personal hygiene products are allowed. (Id.).

Plaintiff next lambasts the nutritional content of the food provided at the Jail. (Id. at 8). He is concerned that the food served at the Jail does not comply with the United States Department of Agriculture's standards. (Id.). For example, Plaintiff complains that no fresh fruits, juices, or vegetables are served; milk is served sporadically; whole grains are not served; and most of the foods are deep fried or boiled. (Id.). Thus, according to Plaintiff, his diet consists of a higher than recommended percentage of "grease." (Id.).

According to Plaintiff, the Jail law library is woefully inadequate. (Id. at 9). The law library only contains the Georgia Code, though the Jail regularly houses federal detainees, does not have any computers or typewriters, and provides no access to computer based legal research. (Id.). Moreover, the books that are provided, namely the Georgia Code, are incomplete. (Id.). Thus, Plaintiff alleges that this inadequacy prevents the "men and women" in custody at the Jail from preparing their cases. (Id.).

Plaintiff also asserts several complaints about the medical care provided at the Jail. (Id. at 10-15). Initially, Plaintiff states that on March 1, 2005, after a suicide attempt, he was placed in isolation for two weeks. (Id. at 10). He alleges that while in isolation, he did not receive any medical attention, even though he had stitches and dressings on his wrists from the cuts caused by his suicide attempt. (Id.). When he was taken out of isolation, it became apparent that some of the stitches had broken. (Id.). Plaintiff asserts that Defendant Reeves explained to Plaintiff, "It will be okay." (Id. at 11). However, Plaintiff was not taken to see a doctor. (Id.). Notably, Plaintiff does not indicate he suffered any injury from the above-stated medical events.

Plaintiff also generally alleges that while detained at the Jail he has contracted multiple skin disorders. However, these skin disorders have apparently been treated with a prescription ointment. (Id.).

Plaintiff also claims that in 2006 he contracted what he refers to as an internal infection. (Id. at 12). After making several verbal and written requests to be seen by a doctor, Plaintiff, after one month, was seen by a doctor, who Plaintiff alleges mis-diagnosed his ailment. (Id.). Thus, Plaintiff's symptoms did not clear up. (Id.). Two weeks later

Plaintiff was seen by a different doctor, who Plaintiff alleges prescribed an antibiotic that apparently cured Plaintiff of this ailment. (Id.). Next, sometime in late 2006, Plaintiff contracted a "staph" infection. (Id.). He again made requests to been seen by a doctor, and it was not until he "made a big scene and the others started to complain," that he was taken to a doctor and treated for the infection. (Id. at 12, 13).[1]

Plaintiff also lodges a complaint about the jailors' management and dispensing of prescribed medication. (Id. at 13). He claims that Lieutenant Reeves, Captain Durden, and a sergeant at the Jail often allow the medications to run out before obtaining a refill, despite orders from the doctors and nurses that instruct the jailors not to allow the medication to run out and to call the doctor's office if there are no refills available. (Id.).

Finally, Plaintiff is unsatisfied with the dental care provided at the Jail. (Id. at 15). Plaintiff alleges that he had an abscessed tooth. (Id.). He made verbal and written requests to see a dentist. (Id.). It is unclear from Plaintiff's complaint how long he had to wait between making his requests and being seen by a dentist, but he implies that it was a long time. (Id.). According to Plaintiff, the dentist had to extract two teeth, as the infection had spread to the roots of both teeth. (Id.).

Plaintiff seeks injunctive relief and monetary compensation equal to his filling fees. (Id. at 6).

---

[1]Plaintiff also includes that several federal detainees also contracted the "staph" infection and required hospitalization. (Id. at 13).

## II. DISCUSSION

### A. Claims Regarding General Conditions at the Jail

Plaintiff's claims concerning the poor sanitation and selection and mode of preparation of food served detainees are vague and conclusory and therefore are not sufficient to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim). In neither of the above-mentioned claims does Plaintiff allege how any named Defendants' actions contributed to these claims. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).

In the absence of an allegation of any connection between the actions of any Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against any named Defendants. Notably, Plaintiff indicates that the conditions are unsatisfactory, but he does not provide any information as to how any of the named Defendants were involved with either the lack of sanitation, nor the food served the detainees. Furthermore, although he asserts that the detainees are not provided sufficient cleaning products, and greasy foods, Plaintiff does not allege any injury from either the sanitation, or lack thereof, nor from the food provided. Accordingly, Plaintiff's claims regarding poor sanitation and greasy food should be **DISMISSED**.

5

## B. No Denial of Access to the Courts

Plaintiff also attempts to assert a denial of access to the courts claim based on the inadequacy of the Jail law library. (Doc. no. 8, p. 9). However, Plaintiff's allegation does not rise to the level of a valid denial of access to the courts claim. (Id.). First, Plaintiff's amended complaint does not name any specific Defendant with respect to this claim, other than to say that the Jail law library is inadequate. (Id.). Furthermore, Plaintiff has not set forth any actual injury, let alone injury sufficient to state a cause of action for denial of access to the courts claim.

To state a viable denial of access to the court claim, Plaintiff must plead and prove actual injury to existing or contemplated litigation or nonfrivous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement."). The Eleventh Circuit has clarified the requirements for pursuing a denial of access to the courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an

6

allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Plaintiff merely states that the Jail law library is inadequate, as it needs more legal resources, including a computer or type-writer, and that "men and women" are prevented from preparing their cases. (Id.). Plaintiff alleges no facts which demonstrate that he had possible viable claims that simply suffered from deficiencies that could have been cured through better research sources and tools in the law library. Moreover, Plaintiff does not claim that he was denied all access to legal material. As such, Plaintiff's denial of access to the courts claim should be **DISMISSED**.

## C.     Claims Regarding Medical Care

Plaintiff's claims regarding the denial of medical care after an attempted suicide and for certain skin conditions also fail. The Eighth Amendment proscribes only deliberate indifference to a serious medical need.[2] Farmer v. Brennan, 511 U.S. 825, 834 (1994). To make a valid deliberate indifference claim under the Eighth Amendment concerning his conditions of confinement, Plaintiff must allege that prison officials knew about and

---

[2] The Due Process Clause of the Fourteenth Amendment functions to provide pretrial detainees with essentially the same level of protection as that afforded convicted prisoners by the Eighth Amendment. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985). Thus, regardless of whether Plaintiff is being held as a pretrial detainee or a convicted inmate, the same legal standard would apply.

disregarded an excessive risk to his health or safety; officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

As to Plaintiff's claim regarding the alleged lack of medical care he received after his suicide attempt on March 1, 2005, that claim is subject to dismissal under the two-year statute of limitations applicable to civil rights cases filed in Georgia. Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986). Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996); Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir. 1980). A claim filed under § 1983 accrues when the plaintiff knows or has reason to know that he was injured, and when he is aware or should be aware of who injured him. Rozar, 85 F.3d at 561-62.

Plaintiff's complaint was filed on May 24, 2007, and, therefore, each claim which accrued before May 24, 2005, is barred by the limitations period unless the "discovery rule" applies such that Plaintiff either did not know, or could not have known of his injury and its cause, until after this date. See id. Thus, at the outset, Plaintiff's claim related to the aftermath of his attempted suicide on March 1, 2005, is barred by the two-year limitations period unless the discovery rule applies. The facts illustrate that Plaintiff either knew or should have known of the alleged injuries resulting from these claims before May 24, 2005.

Thus, this claim is barred by the limitations period.[3]

Plaintiff's skin disorder complaint is also subject to dismissal, as he fails to establish a valid deliberate indifference claim. While Plaintiff may have been afflicted with a skin disorder on more than one occasion, by his own admission, he was prescribed an ointment that evidently cleared up the condition. Thus, Plaintiff has not established deliberate indifference, as he was treated for the problem. Also of note, Plaintiff does not name any Defendant in connection with any of the facts related to these claims regarding his skin condition. Accordingly, the above-mentioned medical claims should be **DISMISSED**.

### D. Failure to Allege a Claim Against Defendant Williams

Although Plaintiff names FNU Williams as a Defendant, he is not listed in the caption of the complaint or mentioned anywhere in Plaintiff's statement of claim.[4] (Id.). As such, Plaintiff has not set forth any allegations which indicate that this Defendant violated his rights. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that a plaintiff must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). Therefore, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Williams. Thus, Defendant Williams should be **DISMISSED**.

---

[3] Moreover, while Plaintiff asserts that he did not receive any medical treatment for the two weeks he was in isolation after his suicide attempt and immediately after he was allowed back in the general population, other than realizing that some of the stitches had broken, Plaintiff does not allege any resultant injury.

[4] Plaintiff was told in the August 13th Order that he must list in both the caption and the body of the complaint the individuals who had participated in the misconduct. (Doc. no. 7, p. 4).

E.  **Failure to Assert a Claim Against the "Jailors"**

In the caption of Plaintiff's amended complaint he lists the "McDuffie County Jailor's Staff 05-07" as a Defendant. The Court's August 13, 2007 Order directing Plaintiff to amend his complaint instructed Plaintiff that he "must name the individuals and/or entities whom he seeks to include as defendants herein in both the caption and the body of his amended complaint. . . ." (Doc. no. 7, p. 4). By merely naming the "McDuffie County Jailor's Staff 05-07" in the caption, Plaintiff has not complied with the Court's August 13th Order because he failed to articulate any facts identifying who these Defendants might be or otherwise indicate how these unnamed individuals were specifically involved in violating Plaintiff's constitutional rights.[5] See Fullman, 739 F.2d at 556-57 (noting that vague and conclusory accusations are insufficient to state a civil rights claim). Thus, the "McDuffie County Jailor's Staff 05-07" should be **DISMISSED**.

### III. CONCLUSION

Accordingly, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims concerning poor sanitation and poor nutrition, his medical claims relating to his attempted suicide and skin condition, and his claims against Defendants Williams and the "McDuffie

---

[5]Plaintiff provides the Court with a table of contents to his complaint. (Doc. no. 8, p. 5). This table of contents is a simple summary of what he alleges in his complaint. (Id.). He begins his table of contents by listing 12 names that appear to be the names of the Jail staff. (Id.). However, he simply provides a list of names with nothing more. (Id.). Moreover, in this list he has provided the names of Defendants Durden and Reeves, Defendants he has individually named in the caption and in the body of the amended complaint. In sum, simply listing several names in a table of contents with nothing more does not amount to an assertion of a valid claim.

County Jailor's Staff 05-07," be **DISMISSED** for failure to state a claim upon which relief can be granted.[6]

SO REPORTED and RECOMMENDED this 31st day of October, 2007, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6]In a simultaneously filed Order, the Court has directed service of process on Defendants Sheriff Marshall, Reeves, and Durden on Plaintiff's Eighth Amendment claims relating to the delay in receiving medical treatment, mismanagement of medication, and delay of dental treatment.

11