IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT

2009 JAN 29 A 10: 17

CLERK dBurton

| | |
|---|---|
| JULIUS M. BURKETT, JR., | ) |
| Plaintiff, | ) |
| v. | ) CV 107-080 |
| LOGAN MARSHALL, Sheriff, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at the McDuffie County Jail ("the Jail"), in Thomson, Georgia, commenced the above-styled case pursuant to 42 U.S.C. § 1983. The matter is now before the Court on Defendants' Motion for Summary Judgment ("Defendants' Motion"). (Doc. no. 35). Plaintiff opposes Defendants' Motion.[1] (Doc. no. 37). For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that an appropriate final judgment be **ENTERED** in favor of Defendants.

---

[1] The Clerk provided Plaintiff with notice of Defendants' Motion, apprised him of his right to file affidavits or other materials in opposition, and informed him of the consequences of default. (Doc. no. 36). Plaintiff opposed Defendants' Motion, but he also filed a motion to delay summary judgment. (Doc. nos. 37, 39). The Court denied Plaintiff's motion to delay summary judgment, but, in an abundance of caution, the Court re-iterated the consequences of Plaintiff's failure to respond to Defendants' Motion and gave him additional time to file a supplemental response. (Doc. no. 42). Despite these warnings, Plaintiff has not submitted a supplemental response. Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), have been satisfied.

I.  STATEMENT OF FACTS

In his amended complaint, Plaintiff argued, among other things, that Defendants violated his civil rights due to improper medical care. (See generally doc. no. 8). The Court sanctioned Plaintiff's complaints of delayed medical care relating to his internal and staph infections, mismanagement of medications, and delayed dental treatment, finding that he arguably stated viable claims for deliberate indifference to a serious medical need against Defendants Marshall, Reeves, and Durden. (Doc. no. 10, pp. 4-5).

A.  Plaintiff's Version[2]

Plaintiff's incarceration at the Jail began in March 2005. (Doc. no. 37, p. 2). Plaintiff alleges that while incarcerated at the Jail, he waited nine days with an abscessed tooth, before being taken to a dentist. (Id. at 3). Plaintiff maintains that the dentist extracted two of Plaintiff's teeth. (Id.). According to Plaintiff, as a result of the purported delay in seeing a dentist, and the fact that two of his teeth were extracted, he suffered "ridicule, humiliation, threats, anxiety, psychological dysfunction, and insomnia." (Id.). Plaintiff further alleges that as a result of the "grossly negligent supervision and training of these jailors . . . [he] . . . contract[ed] Staph." (Id. at 4). Plaintiff claims that "as a result of the staph infection [he] suffered swelling, bleeding, humiliation, ridicule, harassment, anxiety, insomnia, psychological dysfunction, mental abuse, and night sweats [–] even the jailors didn't want to come near me." (Id.). Plaintiff alleges that after a month of exhibiting

---

[2]The Court is aware that Plaintiff attempts, in his objection to Defendants' Motion, to reassert claims the presiding District Judge has already dismissed (doc. no. 16), and assert new claims that have not been sanctioned by the Court; the Court will only address those events that are relevant to the claims that are properly before the Court.

2

symptoms of the staph infection, he was taken to a doctor's office and was seen by a physician's assistant. (Id.). Plaintiff describes in graphic detail the treatment he received from the physician's assistant and claims that as a result of this treatment he has been left with "serious memories, apprehension, extensive mental pain, and reoccurring nightmares lasting still presently." (Id. at 4-5).

Next, Plaintiff alleges that the jailors' duties include the dispensation of medication. (Id. at 5). He argues that none of the jailors are medically trained and therefore they do not know what each medication treats, nor do they understand the severity of Plaintiff's medical condition(s). (Id.). Plaintiff asserts that he has, on numerous occasions, been denied his "mental health" prescription. (Id.). According to Plaintiff, Defendant Durden (the chief jailor and records custodian) should have been aware of the status of the prescriptions and should have ordered the refills in a timely fashion. (Id.). Concerning the dispensation of medication, Plaintiff maintains that when the medication is dispensed to Plaintiff, it is not done according to the directions provided on the prescription. (Id. at 6). Rather, the jailors dispense the medication at meals and "lockdown at night." (Id.). As a result of the purported improper dispensation of the medication, Plaintiff asserts that he has had trouble controlling his "depression, anxiety, mental dysfunction (insomnia) and psychotic tendencies." (Id.). Lastly, Plaintiff asserts that Defendants are liable to him because of the purportedly negligent way in which they run the prison and/or supervise the jail staff.[3] (Id. at 2, 10).

---

[3]Importantly, Plaintiff simply relies on his own self-serving conclusory allegations submitted in his objection to Defendants' Motion. Plaintiff has not submitted any affidavits or exhibits. The Court cautioned Plaintiff that any factual assertions made in the affidavits of the party moving for summary judgment had to be contradicted by the non-moving party through submissions of affidavits or other documentary evidence. Fed. R. Civ. P. 56(e); (see

B. **Defendants' Version**

Concerning Plaintiff's medical treatment, Defendants state that after receiving treatment in a hospital in March 2005, Plaintiff returned to the Jail, where he received regular medical care and medication. (Doc. no. 35, p. 4). Defendants note that Plaintiff is being held at the Jail on behalf of Glascock County. (Id.). Defendant Durden serves as the chief jailor for the Jail over the course of Plaintiff's incarceration. (Id. at 3). Defendant Reeves serves as the Jail supervisor for the Jail over the course of Defendant's incarceration. (Id.). Defendant Marshal serves as the McDuffie County Sheriff over the duration of Plaintiff's incarceration. (Id.).

Defendants contend that although Plaintiff claims to have filed numerous grievances that went unanswered (doc. no. 37, p. 14), in fact, Plaintiff did not exhaust his administrative remedies on any of his alleged claims (doc. no. 35, pp. 6-7). Defendants provide that the Jail has an administrative grievance procedure whereby inmates assert complaints and obtain resolution regarding the conduct of officers or medical staff. (Id.). According to Defendants, the grievance procedure is set forth in the Inmate Handbook ("Handbook"), and that Handbook is provided to inmates and posted prominently in plain view in the inmates' quarters. (Id.). The section in the Handbook addressing grievances provides:

> **(H) GRIEVANCE**
> (1) Any inmate shall be entitled to communicate legitimate complaints. Grievances will be in writing.
>
> Grievances may be given to any staff member for prompt transmittal. All grievances must fully describe the factual basis and circumstances of the

---

also doc. no. 10, pp. 8-9; doc. no. 42, pp. 8-9).

alleged incident or situation and include a specific complaint and signed by the staff member when picked up.

(Id. at Ex. 1). Section (H) in the Handbook dealing with grievances does not address the appeal process for grievances, let alone that the grievances should be appealed. Rather, grievance appeals are addressed in a "McDuffie County Jail Policy and Procedure Directive," Policy Number: E-401. This Policy and Procedure Directive provides:

> **POLICY:**
> It is the policy of the McDuffie County Jail that inmates are permitted to submit grievances to the Jail Administration and that each grievance will receive a response.
>
> **PROCEDURE:**
> The Jail Administrator will devise a grievance form to be made available to all inmates on request.
>
> Completed grievance forms will be delivered to the Jail Administrator who will respond to the grievance.
>
> The grievance response to the inmate will be in writing.
>
> The decision of the Jail Administrator may be appealed to the Sheriff within seventy-two (72) hours of the receipt of the grievance decision.[]

(Id. at Ex. 3).

Defendants provide a copy of all of the grievances filed by Plaintiff.[4] (Doc. no. 35, Ex. 4). Defendants maintain, "Plaintiff did not file any grievance or otherwise participate in the McDuffie County Jail's grievance procedure regarding the alleged acts and omissions of Defendants that form the basis for Plaintiff's Complaint. The Jail offers inmates the

---

[4]All grievances or grievance appeal forms filed by an inmate are retained in the respective inmate's file. (Doc. no. 35, Durden Decl. ¶ 8).

opportunity to appeal grievances, but Plaintiff did not appeal any grievance at the jail." (Id. at 3-4). Defendants filed the instant motion and argue that they are entitled to summary judgment on Plaintiff's claims as a matter of law because: (1) Plaintiff's claim concerning the tooth extraction is barred by the statute of limitations, (2) Plaintiff did not exhaust his administrative remedies, (3) Defendants cannot be held vicariously liable, (5) Plaintiff's claims fail on the merits, and (4) Defendants are protected by qualified immunity. (Doc. no. 35).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving

---

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.   Availability of Administrative Remedies

Simply put, as exhaustion of administrative remedies is a "precondition" to filing suit,

exhaustion under § 1997e(a) is a threshold inquiry. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). As Defendants claim that Plaintiff has not exhausted his administrative remedies, the Court turns to this issue first.

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); see also Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a

Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, No. 05-10399, 162 Fed. Appx. 918, 920, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998).

Here, for Plaintiff to exhaust his administrative remedies at the Jail, he had to submit a grievance in writing to the Jail Administration, who is then required to respond to the grievance in writing. (Doc. no. 35, Exs. 1, 3). Thereafter, the decision of the Jail Administrator may be appealed to the Sheriff within seventy-two (72) hours of the receipt of the grievance decision. (Doc. no. 35, Exs. 1, 3). Thus, the Court must consider whether there are grievances and appeals for all claims raised by Plaintiff.

The record reflects that Plaintiff filed six grievances from the time he became incarcerated at the Jail, until the time he filed the above-captioned case. (Id. at Ex. 4). Of these six grievances, only two of them bear any relevance to this case; he grieved the purported mismanagement of medication. In those two grievances, Plaintiff complains that he had been waiting on a refill of his prescription for Triamcinolone Acetoxide lotion 0.1%. (Id., grievances dated Apr. 18, 2007 and May 21, 2007). Plaintiff did not file any grievance with respect to any of the other claims he alleged that have been sanctioned in this case (the delay in receiving medical treatment concerning his abscessed tooth and infections).

In his objection to Defendants' Motion, Plaintiff does not address the exhaustion issue. Thus, he does not refute Defendants' claim that he has not exhausted his administrative remedies; he addresses only the merits of his claims and apparently attempts to add new claims. As such, Plaintiff has not raised any genuine issue of material fact regarding his failure to exhaust the administrative remedies.

Regardless of Plaintiff's failure to address the exhaustion issue, the Court must construe the facts of this case in the light most favorable to Plaintiff. Here, Defendants assert that Plaintiff "did not file any grievance or otherwise participate in the McDuffie County Jail's grievance procedure regarding the alleged acts and omissions of Defendants that form the basis for Plaintiff's complaint." (Doc. no. 35, pp. 3-4). Additionally, Defendants assert that "the Jail offers inmates the opportunity to appeal grievances, but Plaintiff did not appeal any grievance at the Jail." (Id. at 4).

The Court agrees in part with Defendants' assertions. The Court agrees that Plaintiff did not file any grievances concerning the claims in which he alleged Defendants delayed in providing him with medical treatment. Thus, Plaintiff has failed to exhaust his administrative remedies for his purported delay of treatment claims concerning his abscessed tooth and infections. However, the Court finds that Plaintiff did file two grievances, dated April 18, 2007 and May 21, 2007, concerning the purported mismanagement of medication.[6] (See id.,

---

[6]The Court is aware that the two grievances filed by Plaintiff concerning the mismanagment of medications only address Plaintiff's complaint that he was not receiving his prescription for Triamcinolone Acetoxide lotion 0.1%. These grievances do not directly address Plaintiff's complaint that he was not receiving his "mental health" medications. For purposes of exhaustion only, the Court will presume that these grievances complaining of the purported mismangement of medications (Triamcinolone Acetoxide lotion 0.1%) address Plaintiff's mismangement of medications claims, in general.

10

Ex. 4). Thus, the Court must determine whether Plaintiff completed the administrative process on the purported mismanagement of medications claim.

According to Defendants, in order for Plaintiff to have exhausted his administrative remedies, he had to file an appeal of his grievances. In support of this argument, Defendants rely on Policy Number E-401 (id. at Ex. 3). Defendants maintain that Plaintiff never appealed any grievance. Although this statement is correct, the Court is concerned that Plaintiff may not have been aware that he had to appeal his grievances in order to exhaust his administrative remedies.[7]

Defendants assert that Plaintiff was aware of the grievance procedure because "the grievance procedure was set forth in the Inmate Handbook provided to inmates, and posted prominently in plain view in the inmate living quarters." (Id. at 3). As such, section (H) of the Handbook addressing grievances was available to Plaintiff. However, section (H) does not address any requirement that Plaintiff needed to appeal a grievance decision. The procedure for appealing a grievance decision is set forth in Policy Number: E-401. Defendants do not indicate that Policy Number: E-401 was a part of the Handbook available to Plaintiff. In fact, Defendants do not state whether this policy was available to Plaintiff at all, let alone that Plaintiff was ever made aware that he had to appeal any grievance decision in order to exhaust his administrative remedies. Thus, the question becomes, was the administrative procedure available to Plaintiff?

---

[7]Interestingly, Defendants maintain that a prisoner must appeal his grievance in order to exhaust his administrative remedies. However, Policy Number: E-401 does not say a prisoner **must** appeal the grievance decision. Rather, it says, "The decision of the Jail Administrator **may be** appealed to the Sheriff. . . ." (Doc. no. 35, Ex. 3) (emphasis added).

11

An administrative remedy is not available to an inmate if the "inmate does not know about, and cannot discover through reasonable effort [the remedies or requirements for the remedies] by the time they are needed." Goebert v. Lee County, 510 F.3d 1312, 1322 (11th Cir. 2007). Here, the record is unclear whether Plaintiff knew that he was required to appeal his grievance decision. Likewise, the record is also unclear as to whether Plaintiff had any access to the policy that explained his duty to appeal the grievances. Accordingly, construing the facts of this case in the light most favorable to Plaintiff the Court concludes that it is unclear whether the administrative procedure concerning the requirement to appeal was available to Plaintiff.

In sum, as Plaintiff did not file any grievance concerning the delay of his medical treatment for his abscess tooth or infections, he has failed to exhaust his administrative remedies, on those claims, prior to filing his complaint. Therefore, on these issues, Defendants are entitled to summary judgment. However, as Plaintiff filed two grievances concerning the mismanagement of his medication, and it is unclear whether the administrative procedure concerning the requirement to appeal was not available, Defendants are not entitled to summary judgment based on failure to exhaust his administrative remedies on Plaintiff's mismanagment of medication claim.

### C.    Merits of Plaintiff's Mismanagement of Medication Claim

Plaintiff argues that Defendants were deliberately indifferent to his serious medical needs because, while incarcerated at the Jail, his medication was not dispensed per doctor's orders. (Doc. no. 8). Specifically, Plaintiff asserts that while incarcerated at the Jail, he suffered from depression and a host of other ailments. (Id.). Concerning the dispensation

12

of medication, Plaintiff alleges:

> The jailors duties include the dispensing of prescription and non prescribed medications, one of these jailors are medically trained and without some idea of what the medicine is prescribed for, nor the severity of the medical condition. . . . I myself, (Mr. Burkett) ha[ve] endured numerous denial of my mental health prescription medication even when there are refills labeled on the bottle. [Defendant Durden] (chief jailor records custodian) should be aware of prescription being out and ordering refills from the pill sign off sheets he is custodian of.

(Doc. no. 37, p. 5). Furthermore, Plaintiff claims that the medication, when dispensed, is not dispensed according to the doctor's orders. Rather, according to Plaintiff, medication is only dispensed at meal time or lock down at night. (Id. at 6). Plaintiff also states:

> I am prescribed 400mg 'Seroquel' and Welbutrin, which are mental health medications[] to control depression, anxiety, mental dysfunction – (insomnia), and psychotic tendencies. I have gone without [these medications] for days and [] weeks a[t] a time, discontinuing of these type[s] of medications causes insomnia, depression, mental dysfunction, bipolar tendencies, aggression and suicidal thoughts, disruptive antisocial behavior and dangerously close to psychotic episode[].

(Id.). Finally, concerning the purported mismanagement of Plaintiff's medication, he asserts, "The Dr. and nurses have been notified on numerous occasions about the jail allowing my mental meds to run out even with refills labeled." (Id. at 13).

Defendants, on the other hand, state that Plaintiff's claims against them are solely based on supervisory liability. (Doc. no. 35, p. 9). Additionally, Defendants state that there is no competent evidence that lack of, or delay in, medications caused any harm to Plaintiff. (Id. at 12, 13).

Bearing the standard for summary judgment in mind, Defendants' motion for summary judgment should be granted. To survive Defendants' motion for summary

judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that Plaintiff's injury was caused by the Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted). Although Defendants argue that Plaintiff did not have an objectively serious medical need, construing the facts of the case in the light most favorable to Plaintiff, the Court will presume that Plaintiff's depression was an objectively serious medical need. Assuming Plaintiff had an objectively serious medical need, the Court finds that Defendants did not act with deliberate indifference to that need. The Court also finds that Plaintiff was not injured by any purported delay or denial of medication.

To show that Defendants were deliberately indifferent to his needs, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

In his objection to Defendants' motion Plaintiff argues that during his incarceration, Defendants did not dispense his medication according to his prescription, and that there were numerous instances when he did not receive his required medication. (Doc. no. 37, pp. 5-9). Plaintiff concludes by noting that, as a result this delayed or denial of medication, he suffered from "bipolar, borderline personality disorders, fear anxiety[,] disgust basically mental instability . . . ." (Id.).

However, the record in this case reflects that Plaintiff, on two occasions April 18, 2007, and May 21, 2007, submitted grievances complaining that he was unable to receive Triamcinolone Acetonide a lotion that had been prescribed to him.[8] (Doc. no. 35, Ex. 4). Furthermore, despite Plaintiff's contentions, the record demonstrates that, while incarcerated at the Jail, he has received near-constant attention concerning his medication. The record contains 80 pages of Plaintiff's medication log (not all pages were complete) (doc. no. 35, Ex. 7), and reveals that Plaintiff has been sent to the doctor at least twenty-nine times, seventeen of those visits specifically indicate Plaintiff was there for a refill or check of his medication (id. at Ex. 6). Moreover, although Plaintiff now claims, in his unsworn statement, that he, on numerous, occasions was denied medication for his depression, his file only contained two grievances concerning the mismanagement of medication. These two grievances address Plaintiff's complaints that he was having difficulty obtaining the skin

---

[8]Plaintiff further argues that Defendants were deliberately indifferent to his serious medical needs because they delayed in taking Plaintiff to see a doctor. (Doc. no. 15). As discussed in detail *supra*, Plaintiff's claims concerning the purported delay of medical treatment for the abscessed tooth and infections are not exhausted, thus, the Court need not address those issues.

15

medication. None of the grievances address his need for medication concerning his "mental health."

However, even assuming there was a delay in getting Plaintiff his medication, his claim must still fail. The record does not reflect verifying medical evidence to establish a detrimental effect from the delay or denial of his medication. Plaintiff, in his unsworn statement, alleges that as a result of the denial of his medication he suffered "bipolar, borderline personality disorders, fear anxiety[,] disgust basically mental instability . . . ." However, as Plaintiff's conclusory unsworn statement is insufficient to create an issue of material fact, and there is nothing in the records to substantiate Plaintiff's claims, he has not created a genuine issue of material fact showing that the purported mismanagement of his medications could have caused or exacerbated his mental condition. As previously noted, Plaintiff cannot carry his burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris, 663 F.2d at 1034.

In sum, Plaintiff has merely described his dissatisfaction with the dispensation of medication by the staff at the Jail. Plaintiff has not shown that the named Defendants were responsible for the purported mismangement, let alone that the purported mismangement of medication had a detrimental effect on him. Thus, Plaintiff has not provided the Court with medical evidence to support his arguments that Defendants were deliberately indifferent to his serious medical needs or that he suffered any detrimental effects as a result of the medical treatment he received while incarcerated at the Jail. As Plaintiff's opposition to Defendants' Motion is nothing more that an unsworn self serving statement, his allegations are insufficient to create a genuine issue of material fact. Therefore, the Court finds that

16

Defendants are entitled to summary judgment on Plaintiff's claim for medical deliberate indifference concerning the purported mismanagement of medication.

D.    **Supervisory Liability**

Plaintiff's claims must also fail because, as argued by Defendants, he has indeed named them as defendants because of their supervisory roles at the Jail. As supervisors, Defendants cannot be held personally liable under § 1983. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). In this case, there is no allegation that Defendants were actually involved in the alleged mismanagement of medication. Thus, for Plaintiff's claims against these Defendants to survive summary judgment, a casual connection between the actions of these Defendants and the mismanagement of medication must exist.

The "causal connection" can be established "when a history of widespread abuse[9]

---

[9]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

17

puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . results] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (be shown when the quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff states that he brought this lawsuit against Defendants because of "their direct and indirect deliberate indifference to the rights violations perpetrated by their subordinate jailors under their direct and indirect supervision and employment at [the Jail]." (Doc. no. 13, p. 3). The closest Plaintiff gets to asserting that any Defendant was involved causally with the purported mismanagement of medication is Plaintiff's conclusory allegation that Defendant Durden "should be aware of prescriptions being out and ordering refills from the pill sign-off sheet he is custodian of." (Id. at 5). As this is a conclusory, unsworn statement, it is insufficient to create a genuine issue of material fact. Concerning Defendants Marshall and Reeves, Plaintiff solely identifies them based on their supervisory capacities as sheriff and jail supervisor, and in no way attempts to show a causal relation between them and the purported mismanagement of medications.[10] Plaintiff has not alleged that

---

[10]Plaintiff's objections to Defendants' Motion address Defendants as follows: Plaintiff bring this lawsuit . . . Against [Defendant Marshall,] [Defendant Durden ] (chief jailor, records custodian), and [Defendant Reeves] (jail supervisor) for their direct and indirect deliberate indifference to the rights violations perpetuated by their subordinate jailors under their direct and indirect supervision and employment at [the Jail]. (Doc. no. 13, p. 3). Plaintiff further writes: Second, the claim statement, evidenced by the records of the jail that are in control and custody of [Defendant Durden] (chief jailor, records custodian) and

Defendants' improper 'custom or policy . . . results] in deliberate indifference to constitutional rights. Nor has Plaintiff shown an inference that Defendants directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

More importantly, however, as the Court determined that Defendants have not violated any of Plaintiff's constitutional rights concerning his medical care, Plaintiff cannot maintain a § 1983 action for supervisory liability. Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2005) (reversing of district court's denial of summary judgment, because the Eleventh Circuit concluded that plaintiff's constitutional rights were not violated, thus, plaintiff could not maintain a § 1983 action for supervisory liability against the defendant). As such, Defendants are entitled to summary judgment on Plaintiff's claims.

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' Motion be **GRANTED**, that this civil action be **CLOSED**, and that an appropriate final judgment be **ENTERED** in favor of Defendants.

SO REPORTED and RECOMMENDED this 29th day of January, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[Defendant Reeves] further show the deliberate indifference of the jailors and their supervisors was in direct violation of not only jail policies and procedures but [] settled in U.S. and Georgia State Constitutional law. (Id. at 9). Lastly, Plaintiff notes: I have written letters directly to [Defendant Marshall] addressing my grievances, but have never received a response or attention to those letters. (Id. at 14).